IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Elease Robinson, ) | |
| ) | Civil Action No. 8:10-02192-TMC -KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Greenwood County, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendant's motion to dismiss or, in the alternative, for summary judgment (doc. 17). In her complaint, the plaintiff alleges claims against the defendant, her former employer, for race discrimination, age discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Age Discrimination in Employment Act ("ADEA").

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

The plaintiff was employed with Greenwood County from September 1980 through December 31, 2008, when her position was eliminated (pl. dep. 10, 13-15; def. ex. 1). During most of her employment, she worked with accounts payable in the County Treasurer's Office (pl. dep. 18-21). In 2006, the plaintiff and another employee in the Treasurer's Office applied for the position of Deputy County Treasurer. In August of that year, County Treasurer Ken Spate selected the other applicant. The successful applicant had less seniority with the County than the plaintiff but had worked with Mr. Spate at a Greenwood bank before he became County Treasurer. The plaintiff was disappointed that the Treasurer did not select her, believed she had been treated unfairly, and told the Treasurer of her dissatisfaction with his decision (pl. dep. 28-37). According to the plaintiff,

when she told the Treasurer that she was not satisfied with his decision, he responded "that he was the Treasurer and it was his decision and when I got to be treasurer then I could make the decision" (pl. dep. 42).

Shortly afterwards, Assistant County Manager Thessa Smith, who is an African-American and three years younger than the plaintiff (Smith aff. ¶ 11; pl. dep. 41), informed the plaintiff "that [the Treasurer] wanted [the plaintiff] out [of his office] and if [she] didn't go he was going to fire [her]" (pl. dep. 38, 40-43). Ms. Smith told the plaintiff that she would try to find a position for her somewhere else in County government (pl. dep. 40).

Subsequently, Ms. Smith transferred the plaintiff from the Treasurer's Office to County Administration and gave the plaintiff a salary increase (pl. dep. 40, 46). Ms. Smith assigned the plaintiff to train with the County's vital records officer, Belle Kennette, so that the plaintiff could take over that position upon Ms. Kennette's anticipated retirement. However, Ms. Kennette ultimately decided not to retire. Accordingly, Ms. Smith again sought out a job for the plaintiff (pl. dep. 47-49; 52-54).

In September 2007, Ms. Smith assigned the plaintiff to serve as the County's in-house coordinator of workers' compensation claims, a role previously performed by the County's Human Resources Director (pl. dep. 56-64). The plaintiff continued in this role until October 2008, when Ms. Smith reassigned her temporarily to the Voter Registration Office to help cope with the swell of people registering to vote in the 2008 Presidential election (pl. dep. 67-73, def. ex. 4; Smith aff. ¶ 7).

While the plaintiff was assigned to the Voter Registration Office, Ms. Smith designated another County employee, Loretta Lewis, to perform the workers' compensation coordination duties that the plaintiff had been performing. Ms. Lewis is an African-American and is seven years younger than the plaintiff (pl. dep. 115; Smith aff. ¶ 11). Ms. Lewis had recently been selected as the receptionist in Administration after Tammy Watts, the person who had previously held that job, was selected for a position in the Treasurer's Office. According to the plaintiff, Ms. Lewis absorbed both Ms. Watts' former position as receptionist and the plaintiff's position as the workers' compensation coordinator (pl. dep.

2

77-80, 87-89, 92-94). The plaintiff questioned in her own mind why Ms. Smith had not assigned Ms. Lewis instead of the plaintiff to work in Voter Registration, since the plaintiff already knew the workers' compensation job and Ms. Lewis did not. The plaintiff concluded that Ms. Smith must have given Ms. Lewis the workers' compensation job because Ms. Smith and Ms. Lewis were friends, went to the same church, and Ms. Smith "was looking out for her friend" (pl. dep. 79).

On November 17, 2008, while the plaintiff was still working in the Voter Registration Office, Ms. Smith called the plaintiff to her office and told her that her job was being eliminated effective December 31, 2008, due to budget cuts. Ms. Smith told the plaintiff that she (the plaintiff) had enough years of service to qualify for retirement. The plaintiff asked if there were somewhere else in the County that Ms. Smith could place her because she wanted to continue working, but Ms. Smith said that no positions were available at that time (pl. dep. 81-82).

On December 10, 2008, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that she was terminated because of her age and race (def. ex. 2). She amended her charge in March of 2009 to add an allegation of retaliation (def. ex. 2). The EEOC investigated the charge and amended charge and issued a "no-cause" determination (pl. dep. ex. 12). This action followed.

## **APPLICABLE LAW AND ANALYSIS**

In her complaint, the plaintiff alleges that she was discharged from employment because of her age (56) and race (African-American). She also alleges that she was retaliated against for having engaged in protected activity. As noted by the defendant (def. m.s.j. at 1 n.1), the plaintiff's complaint also makes passing reference to the Civil Rights Act of 1866, 29 U.S.C. § 211, and 42 U.S.C. § 12117, but none of these statutes afford the plaintiff any claim to relief in the context of this action.

As to the Civil Rights Act of 1866 (42 U.S.C. § 1981), the Supreme Court held in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989) that there is no implied right of action under that statute against a governmental entity and "that the express cause of action for damages created by [42 U.S.C.] § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . ." *Jett*, 491 U.S. at 733. Thus, the plaintiff cannot assert a claim against the County directly under 42 U.S.C. § 1981, and she has not invoked 42 U.S.C. § 1983.[1] Title 29, United States Code, Section 211 is part of the Fair Labor Standards Act ("FLSA"), and 42 U.S.C. § 12117 is part of the Americans with Disabilities Act ("ADA"). The complaint does not allege claims under these acts.

The defendant first argues that the plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it does not contain sufficient factual matter to state a plausible claim for relief. In the alternative, the defendant moves for summary judgment. Assuming for purposes of this motion that the plaintiff's complaint alleges sufficient facts to withstand a motion to dismiss, this court finds that the defendant is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56 as discussed below.

Rule 56 states as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the

---

[1] In a footnote copied from the defendant's brief but stated in the positive rather than the negative (pl. resp. m.s.j. at 1 n.1; *see* def. m.s.j. at 1 n.1), the plaintiff states that under the *Jett* case she *can* assert a claim against the County directly under Section 1981 and she *has* invoked 42 U.S.C. § 1983. The *Jett* case does not so hold, and a review of the plaintiff's complaint reveals that she has not invoked Section 1983.

4

applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

*Race and Age Discrimination*

To establish a *prima facie* case[2] with respect to her race discrimination claim, the plaintiff must show: "(1) [s]he is a member of a protected class; (2) [s]he suffered adverse employment action; (3) [s]he was performing her job duties at a level that met h[er] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). A *prima facie* case of age discrimination requires proof of the same elements except that, with respect to the fourth element, evidence that the plaintiff's replacement was "substantially younger" will suffice even if the replacement was not outside the class protected by the ADEA (i.e., under 40). *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996); *see also Warch v. Ohio Casualty Insurance Co.*, 435 F.3d 510, 513 (4th Cir. 2006).

On December 10, 2008, the plaintiff filed a charge of discrimination against the County in which she alleged that the defendant discriminated against her as follows:

> I am Black and 56 years old. I worked for the above cited employer over 28 years. On November 17, 2008, I was informed by Thessa Smith (Black/age mid 40s), Supervisor, my job would be eliminated and I am eligible for retirement. On November 24, 2008 I spoke with Vic Carpenter (White/age mid 40s) and he upheld what Thessa said.
>
> To my knowledge, I believe Loretta Lewis (Black/age approximately 49) was given my job duties.

---

[2]The defendant notes that the plaintiff conceded in her deposition that she had no direct evidence of age or race discrimination (pl. dep. 98, 114-15, 136-37). In her response brief, the plaintiff argues that "at her deposition, [she] disputed that she had no direct evidence of age or race discrimination" (pl. resp. m.s.j. at 11). The plaintiff cites the same deposition excerpts as those cited by the defendant (*see* def. m.s.j. at 10). The cited testimony does *not* support the plaintiff's position, and the plaintiff has failed to cite any direct evidence in her brief in opposition to the motion for summary judgment. The parties have both analyzed the plaintiff's case under the burden-shifting method of proof of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), and thus this court has as well (*see* def. m.s.j. at 8-21; pl. resp. m.s.j. at 9-24).

6

> I believe my employer's actions are discriminatory because of my race and age. This was done in violation of Title VII of the Civil Rights Act of 1967 (sic) and the Age Discrimination in Employment Act of 1967, as amended.

(Def. ex. 2).

Because the plaintiff never filed a charge of discrimination concerning either her failure to be selected as Deputy Treasurer in August 2006 or her involuntary transfer out of the Treasurer's Office thereafter, she cannot litigate those two discrete adverse employment actions in this lawsuit. *See National Railway Passenger Corp. v. Morgan*, 536 U.S. 101, 109-15 (2002). Moreover, the plaintiff did not plead these claims in her complaint. Accordingly, only the plaintiff's termination from employment is at issue here.

While the plaintiff can satisfy the first three elements of a *prima facie* case of racially discriminatory discharge under Title VII, she cannot satisfy the fourth element. The plaintiff alleges in her EEOC charge and complaint and testified in her deposition that Loretta Lewis assumed her job duties (pl. dep. 93-94, 133-34; def. ex. 2; comp. ¶ 7). Ms. Lewis, like the plaintiff, is an African-American (pl. dep. 115). Thus, she cannot show that she was replaced by someone outside her protected class.

The plaintiff also cannot satisfy the fourth element of a *prima facie* case of age discrimination. Ms. Lewis was 49 at the time of the alleged discrimination, and the plaintiff was 56 years old (def. ex. 2; Smith aff. ¶ 11). Accordingly, Ms. Lewis was not "substantially younger" than the plaintiff. *See Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997) (finding age difference of seven years to be presumptively insubstantial); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 338 (6th Cir. 2003) ("The overwhelming body of cases in most circuits has held that age differences of less than ten years are not significant enough to make out the fourth part of the age discrimination prima facie case.").

Under the burden-shifting method of proof of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), if the plaintiff can establish a *prima facie* case, the burden then shifts

to the defendant to produce a legitimate, nondiscriminatory reason for its actions against the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-55 (1981) (this is a burden of production, not persuasion). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). In *Reeves*, the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because "[i]t is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 146-47 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)) (emphasis in original). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

Here, the defendant has met its burden. The defendant contends that the plaintiff was discharged because her position was eliminated due to budget cuts. Ms. Smith testified in her affidavit that the County had to reduce its expenses and payroll due to the declining economy in 2008 and that, as a result, several positions were eliminated, including the plaintiff's. She called the plaintiff in on November 17, 2008, and informed her that "due to budget cuts, her job would be eliminated at the end of the year." Ms. Smith also told the plaintiff that because she had attained 28 years of credited service with the state retirement

8

system, she was eligible to retire and draw immediate benefits (Smith aff. ¶ 9).  The plaintiff corroborated Ms. Smith's account in her deposition testimony (pl. dep. 81-82).

Even assuming the plaintiff could establish a *prima facie* case of age and race discrimination, she cannot show that the defendant's given reason was a pretext for discrimination.  The plaintiff argues that the County "is a non-profit entity [and] is far less affected by economic conditions than certain private entities" and that the defendant "has not shown any logical reason that the pre-textual economic condition has adversely impacted the [d]efendant particularly considering the benefit of the federal economic stimulus" (pl. resp. m.s.j. at 15).  The plaintiff misunderstands the defendant's burden. *Burdine*, 450 U.S. at 253-55 (this is a burden of production, not persuasion).  It is ultimately up the plaintiff to identify "sufficient evidence upon which one could find that the protected trait . . . actually motivated the [County's] decision."   *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 286 (4th Cir. 2004) (en banc) (citation omitted).

The plaintiff has offered no evidence that her race or age, rather than the County's need to reduce its budget because of the poor economy, caused her termination. She testified to her belief that Ms. Smith protected Loretta Lewis at her (the plaintiff's) expense by allowing Ms. Lewis to assume the plaintiff's former job duties (pl. dep. 77-81, 87-89, 92-94).  Assuming that Ms. Smith did retain Ms. Lewis rather than the plaintiff because she and Ms. Lewis are friends and/or attend the same church, that would not permit an inference that race and/or age discrimination motivated the plaintiff's termination. *See Lightner v. City of Wilmington*, 545 F.3d 260, 263-64 (4th Cir. 2008) (holding that to prevail on Title VII claim, plaintiff must show that the proffered nondiscriminatory reason was a pretext for prohibited discrimination, not for some other disreputable but not unlawful reason).

The plaintiff also testified that, in "hindsight," she believes that she "was being set up" for termination by being put in a "made-up position" by Ms. Smith in 2006 just long

9

enough for her to become retirement eligible (pl. dep. 83-84, 88, 128-29). She contends that putting her in a "made-up" job until she was retirement eligible and then getting rid of her because she was retirement eligible constitutes age discrimination. However, even if the County targeted her for termination because she was retirement eligible, that fact would not suffice to prove pretext or otherwise defeat summary judgment on her age discrimination claim.

In *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), the Supreme Court made clear that employment decisions wholly motivated by factors other than age do not violate the ADEA "even if the motivating factor is correlated with age, as pension status typically is." 507 U.S. at 611. The Court explained:

> On average, an older employee has had more years in the work force than the younger employee, and thus may well have accumulated more years of service with a particular employer. Yet an employee's age is analytically distinct from his years of service. An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA . . . may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age based."

*Id.* Accordingly, even if the plaintiff had evidence that she was placed in a "made-up position" long enough to get her to the point to where she was retirement eligible and then she was laid off because she was retirement eligible, this would not suffice to entitle her to a trial on her claim that she was terminated because of her age.

Moreover, as argued by the defendant, the plaintiff's race and age claims are further undermined by the fact that Ms. Smith, like the plaintiff, is African-American (pl. dep. 41) and is insignificantly younger (three years) than the plaintiff (Smith aff. ¶ 11). The fact that the decision-maker and plaintiff are of the same race undermines a claim of race discrimination, *see Orgain v. City of Salisbury, Md.*, No. 07-1689, 2008 WL 5396483, at *13

(4th Cir. 2008), just as the fact that the decision-maker and the plaintiff are approximately the same age undermines a claim of age discrimination. *See McNeal v. Montgomery County Gov't*, No. 07-1323, 2009 WL 122607, at *7 (4th Cir. 2009).

Based upon the foregoing, the defendant is entitled to summary judgment on the plaintiff's claims for discriminatory discharge under Title VII and the ADEA.

*Retaliation*

To establish a *prima facie* case of retaliation, the plaintiff must prove: 1) she engaged in a protected act; 2) an adverse employment action was taken against her; and 3) there is a causal connection between the protected act and the adverse employment action. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). The adverse action need not be an ultimate employment decision, but must be "materially adverse," meaning "'it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, C.A. No. 08-1090, 2009 WL 667421, at *3 (4th Cir. 2009) (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The standard for demonstrating a materially adverse employment action is less stringent for a retaliation claim than it is for a substantive discrimination claim. *See Burlington*, 548 U.S. at 67. Nevertheless, a plaintiff is still required to demonstrate actual harm or injury caused by the retaliatory conduct. *Id.*

On March 16, 2009, the plaintiff filed an amendment to her December 10, 2008, EEOC charge alleging:

> On December 10, 2009 (sic) I filed a charge of discrimination against the above cited employer. On December 24, 2008, I received a letter stating I violated the Attendance and Leave Procedures. I believe these are false accusations against me. I coordinated my leave time off in accordance with instructions in a memo dated October 14, 2008 concerning my assignment to the Voter Registration Office. Mrs. Moody was be (sic) notified in advance if I was out of work or I would call in sick.

11

> I believe my employer's actions are retaliatory because I filed an EEOC complaint. This was done in violation under (sic) Title VII of the Civil Rights Act of 1964, as amended.

(Def. ex. 2).

In her deposition, the plaintiff testified that the charge that she filed December 10, 2008, and amended on March 16, 2009, is the only charge of discrimination that she ever filed (pl. dep. 15-17). She also testified that she had never previously complained about race discrimination or age discrimination to anyone while she was employed by the defendant (pl. dep. 52). The plaintiff argues in her response in opposition to the motion for summary judgment that she engaged in protected activity "based on her discrimination charge made to the Treasure[r] [as] well as subsequently filing the charge of discrimination dated December 10, 2008. . . " (pl. resp. m.s.j. at 21 n.3). The plaintiff's argument absolutely conflicts with her sworn deposition testimony in which she testified that prior to her EEOC charge she had never complained of discrimination to anyone while she was employed by the defendant (pl. dep. 52). She further testified that during her discussion with Treasurer Spate she told him that she was "dissatisfied" with his decision to promote someone else to the position of Deputy Treasurer (pl. dep. 28-37, 45). However, as argued by the defendant, expressing dissatisfaction and a feeling of unfairness with an employment action is not statutorily "protected activity" under Title VII and/or the ADEA's anti-retaliation provisions. *See McNair v. Computer Data Systems, Inc.*, No. 98-1110, 1999 WL 30959, at * 5 (4th Cir. 1999); *see also Miles v. Dell, Inc.,* 429 F.3d 480*,* 492 (4th Cir. 2005) (to be statutorily protected activity, complaint to management about adverse employment action must be couched in terms of unlawful discrimination). Accordingly, the plaintiff cannot assert that her failure to be selected as Deputy Treasurer in August 2006 and her subsequent transfer from the Treasurer's Office to Administration violated either the ADEA's or Title VII's anti-retaliation provisions. *See Hindman v. Greenville Hosp. Sys.*, 947 F. Supp. 215, 224 (D.S.C. 1996) (where "the challenged conduct precedes the protected activity,

12

causation is absent, and consequently a prima facie case cannot be satisfied"). Based upon the foregoing, the only allegedly adverse actions at issue here are the plaintiff's termination from employment and the December 22, 2008 letter.

The plaintiff argues that her termination from employment was in retaliation for the filing of her EEOC charge. However, the plaintiff cannot show a causal link between her EEOC charge and her termination from employment. The plaintiff did not file her December 10, 2008 EEOC charge until *after* she was told that her position was being eliminated. *See Hindman*, 947 F. Supp. at 224 ("The requisite causal connection for retaliation claims can be established only if the protected activity preceded the alleged retaliatory conduct."). Indeed, it was because she was informed by Ms. Smith on November 17, 2008, that her job would be eliminated at the end of the year that the plaintiff filed a charge in the first instance (pl. dep. 81-82; def. ex. 2). As the Supreme Court made clear in *Clark County School District v. Breeden,* 532 U.S. 268 (2001), the anti-retaliation provisions of employment discrimination laws do not require employers to suspend previously determined personnel actions simply because an affected employee files a charge with the EEOC or an action in court. 532 U.S. at 272. Inasmuch as the decision to eliminate the plaintiff's job and terminate her employment effective the end of the year had already been made by the County and communicated to the plaintiff before she engaged in any protected activity under the ADEA or Title VII, she cannot prove that her protected activity was causally linked to her separation from employment.

The plaintiff further alleges that the December 22, 2008, letter she received from Ms. Smith was in retaliation for filing the EEOC charge. Ms. Smith's December 22nd letter reads as follows:

> Elease Robinson
> [Address]
>
> Reference: Violation of Attendance and Leave Procedures-Section 4-1-22 and 4-1-24

> Please note procedures for ALL leave must be approved and paperwork submitted for leave requested prior to your absence.
>
> It has been noted that during the week of December 8th and December 15th you were out of the office and did not submit your leave time within the allocated pay period. You have been informed by the Personnel Manager that your leave should continue to be reported to the Administration office. It is your responsibility to ensure your time away is approved and recorded in a timely manner.
>
> Also the week of December 22nd, I was informed that you were taking additional unapproved leave. In the past you have emailed your leave request to me for it to be approved and processed which was an acceptable practice. It is unaccepted for an employee to continue taking leave without the approval of his/her immediate supervisor and department.
>
> If you have any questions about the procedures or your requirements, please feel free to contact me.
>
> Sincerely,
>
> Thessa G. Smith
> Assistant County Manager

(Def. ex. 8).

It is undisputed that the above letter resulted in absolutely no harm or injury to the plaintiff (pl. dep. 113 ("[W]hy waste time sending out a letter. I was gone any way.")). Thus, it cannot constitute a materially adverse action as required to support a claim for retaliation. *See Burlington*, 548 U.S. at 67 (finding that while the standard for demonstrating a materially adverse employment action is less stringent for a retaliation claim than it is for a substantive discrimination claim, a plaintiff is still required to demonstrate actual harm or injury caused by the retaliatory conduct).

Based upon the foregoing, the defendant is entitled to summary judgment on the plaintiff's retaliation claim.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendant's motion for summary judgment (doc. 17) should be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

November 22, 2011
Greenville, South Carolina